CH

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

G. Robert Norfleet )
)
_____ )
)
_____ )
(Name of the plaintiff or plaintiffs) )
)
v. )
)
First Church of the )
Nazarene )
)
_____ )
(Name of the defendant or defendants) )

**09CV3884**
**JUDGE SHADUR**
**MAG.JUDGE SCHENKIER**

**RECEIVED**

JUN 2 6 2009
Jun 26 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

1. This is an action for employment discrimination.

2. The plaintiff is  G. Robert Norfleet  of the
county of  Cook  in the state of  Illinois .

3. The defendant is  The First Church of the Nazarene , whose
street address is  12725 Bell rd. ,
(city) Lemont  (county) Cook  (state) Illinois  (ZIP) 60439
(Defendant's telephone number)  (708) - 349 - 0454 

4. The plaintiff sought employment or was employed by the defendant at (street address)
 12725 Bell rd.  (city) Lemont 
(county) Cook  (state) IL .  (ZIP code) 60439

5. The plaintiff [*check one box*]

(a) ☐     was denied employment by the defendant.

(b) ☐     was hired and is still employed by the defendant.

(c) ☒     was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) April   , (day) 1   , (year) 2006 .

### 7.1    *(Choose paragraph 7.1 or 7.2, do not complete both.)*

(a) The defendant is not a federal governmental agency, and the plaintiff   [*check one box*]   ☐ *has not*    ☒ *has*    filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

(i) ☒ the United States Equal Employment Opportunity Commission, on or about (month) July    (day) 20    (year) 2006 .

(ii) ☒ the Illinois Department of Human Rights, on or about (month) August    (day) 21    (year) 2006 .

(b) If charges *were* filed with an agency indicated above, a copy of the charge is attached.   ☒ YES.     ☐ NO, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2     The defendant is a federal governmental agency, and

(a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

2

☐    Yes (month)_____ (day)_____ (year) _____

☐    No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)    Attached is a copy of the

     (i) Complaint of Employment Discrimination,

     ☐ YES    ☐ NO, but a copy will be filed within 14 days.

     (ii) Final Agency Decision

     ☐ YES    ☐ NO, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐    the United States Equal Employment Opportunity Commission has not issued

     a *Notice of Right to Sue.*

(b) ☑    the United States Equal Employment Opportunity Commission has issued a

     *Notice of Right to Sue,* which was received by the plaintiff on
     (month) $\text{MarCh}$ (day) $30$ (year) $2009$ a copy of which
     *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only
those that apply*]:

(a) ☑    Age (Age Discrimination Employment Act).

(b) ☐    Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3

(c) ☑ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12.    The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☑ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☑ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☑ other (specify): in violation of 29 USC Sec. 623(f)(2)(B)(i)
Respondent Canceled plaintiff's health insurance benefits

4

and replaced Plaintiff's health insurance benefits
with those that were inferior and which cost
the Respondent less than health insurance Coverage that Respondent
spent on younger, non-disabled employees. Respondent violated 29 USC sec. 623(l)(B)(i)
based on Plaintiff's age and disability - age was 66; disability deafness and history of Cancer.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Please See attached forms

14. **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☑ YES ☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☐ Direct the defendant to (specify): _____

(g) ☑ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☑ Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

(Plaintiff's name)

Griffith Rodney Nanfro

(Plaintiff's street address)

1 East Logan St.

(City) Lemont (State) IL (ZIP) 60439

(Plaintiff's telephone number) (630) – 257-6699

Date: 6/26/09

6

Item # 13.

Plaintiff G. Robert Norfleet ("Norfleet") is a 69 year-old, partially deaf man with a recent history of prostate cancer. From August, 2001 until he was terminated in July 17, 2006, Norfleet was a full-time Facilities Manager for the First Church of the Nazarene of Lemont, Illinois ("First Church"). On July 20, 2006, Norfleet filed a Charge with the EEOC/IDHR, charging violation of the Age Discrimination in Employment Act (ADEA). In December, 2008, the IDHR dismissed that Charge. On August 21, 2006, Norfleet filed a Charge with the EEOC/IDHR charging: 1) Cancellation of Health Insurance Benefits due to age(which was 66 at the time); 2) Cancellation of Health Insurance Benefits due to physical disability (history of cancer); 3) Harassment in Retaliation for opposing unlawful retaliation; 4) Discharge in retaliation for opposing unlawful discrimination; 5) Discharge due to age (66); 6) Discharge due to physical disability (history of cancer); 7) Discharge due to physical disability (hearing impairment). The EEOC dismissed his charges on March 30, 2009, and sent him a right to sue letter.

> **I.** **FIRST CHURCH VIOLATED THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)—29 USC S 623(f)(2)(B)(i)—BY CANCELING NORFLEET'S HUMANA HEALTH CARE INSURANCE PLAN, WHICH FIRST CHURCH PROVIDES TO ALL OF ITS FULL-TIME EMPLOYEES, AND REPLACING IT WITH TWO MEDICARE PLANS WHOSE BENEFITS WERE SUBSTANTIALLY INFERIOR TO THOSE UNDER HUMANA AND WHICH COST FIRST CHUCH LESS THAN ITS YOUNGER, NON-DISABLED EMPLOYEES**

1. Norfleet was hired full-time by Respondent, The First Church of the Nazarene of Lemont ("First Church") on August 20, 2001 as a Facilities Manager.

1

2.    From the start of his employment in August of 2001, until April of
      2006, Norfleet was covered by Humana Health Care. First Church
      provides Humana Health Care insurance and pays all premiums for all
      of its full-time employees.

3.    On April 1, 2006, Andy Combs ("Combs"), the Administrator and
      Pastor of First Church, and John Steinborn, ("Steinborn")First Church's
      Health Insurance Agent, switched Norfleet's current Humana Plan,
      which was covered by First Church, to Blue Cross/Blue Shield
      ("BCBS") Medicare Supplement Insurance and the BCBS Prescription
      Medicare "D" Plan, because Norfleet was eligible for Medicare (as he
      was 66 at the time). At this time, since January of 2005, Norfleet had
      been receiving Medicare, as a "secondary" insurance plan, which he had
      been paying the premiums for, in addition to First Church's Humana
      Health Care plan.

4.    Steinborn explained to Norfleet that the BCBS Medicare Supplement
      Insurance and the BCBS Prescription Medicare "D" plan would be "as
      good or better" than the Humana Group Medical/ Dental Health
      insurance plan that all the other full-time employees enjoyed. Combs
      stated that the change in Norfleet's health insurance would save First
      Church "a lot of money."

5.    The benefits Norfleet received under the BCBS Medicare Supplement
      Insurance and the BCBS Prescription Medicare "D" plan were
      substantially inferior to the benefits Norfleet received under the

2

Humana Group Medical/Dental insurance — a package offered to the Church's younger employees, including pastors. Under the Humana Group Medical/Dental plan Norfleet (a) was never refused treatment by any doctor or hospital; (b) was never asked to pay a deductible; (c) had daily cancer radiation treatments for many months with all charges (estimated to be approximately $80,000) covered; (d) had all prescription costs covered with a small co-pay; (e) enjoyed dental benefits; and (f) enjoyed hearing and vision benefits (Norfleet is hearing impaired and vision impaired).

In contrast, the BCBS Supplement (a) did not cover any dental work; (b) did not cover any hearing benefits; (c) did not cover any vision benefits; (d) required Norfleet to obtain new prescriptions and change his pharmacy; (e) required Norfleet to pay significantly more for his prescriptions( $439—and under Humana the co-pay for prescriptions was quite minmal); (f) required Norfleet to change some of his doctors (including those treating him for cancer); (g) caused certain doctors to whom Norfleet was referred to refuse to see him because he was a Medicare patient; (h) caused certain doctors to spend far less time with him because he was a Medicare patient; and (i) limited Norfleet to only Medicare-approved procedures. In addition, Norfleet heard from his doctors at LaGrange Hospital, who had been providing his cancer treatment that Medicare was refusing to pay for certain treatment(s).

6.      Norfleet was 66 years old, and was undergoing treatment for cancer, at the time the Humana Group Medical/Dental coverage was canceled and replaced with less beneficial coverage. Norfleet was concerned about whether his future cancer treatments would be covered.

7.      Respondent saved approximately $500 per month as a result of canceling Norfleet's Humana Group Medical/Dental coverage and switching him to Medicare/Medicare supplement coverage.

8.      Norfleet was the only employee who suffered this adverse health insurance change. No full-time, younger, non-disabled employees of Respondent had their Humana Group Medical/Dental coverage canceled.

9.      Respondent's change to Norfleet's health insurance benefits was prohibited by the ADEA. The Older Workers Benefit Protection Act of 1990 amended the ADEA to specifically prohibit employers from denying benefits to older employees. An employer may not reduce benefits based on age if the cost of providing the reduced benefits to older workers is less than the cost of providing benefits to younger workers. The statute reads as follows:

(f) . . . It shall not be unlawful for an employer, employment agency, or labor organization . . . (2) to take any action otherwise prohibited under subsection (a), (b), (c), or (e) of this section-- . . . (B) to observe the terms of a bona fide employee benefit plan--(i) where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker, as permissible under section 1625.10, title 29, Code of Federal Regulations (as in effect on June 22, 1989) . . . . 29 U.S.C. § 623(f)(2)(B)(ii).

4

10.    The fact that First Church canceled Norfleet's Humana Health Care
Insurance with a plan whose benefits were significantly inferior to those
provided by Humana, and the fact that First Chuch spent much less on the
Medicare Supplement Insurance Plan than what they were spending on the
Humana Group Insurance for their younger and non-disabled employees,
was a direct violation of the above-cited statute.

**II.    FIRST CHURCH DISCRIMINATED AGAINST
PLAINTIFF NORFLEET WHEN IT DISCHARGED HIM
BASED UPON HIS AGE AND DISABILITY, IN
VIOLATION OF 29 U.S.C. § 623(a)(1) AND 42 U.S.C.
§ 12112(a)**

1.    On June 20, 2006, Norfleet received a letter addressed to "all
current custodial employees," stating that they would be discharged on
July 17, 2006, as all janitorial duties would be outsourced to a cleaning
service.

2.    First Church did not eliminate its entire custodial staff. The only
employees who had received this letter and whose employment
was then terminated were over 60 years old: Marta Ramirez, then
age 62, and Robert Hopkins, then approximately 70, and Norfleet,
then age 66. Other younger, custodial employees were not
terminated. For example, Mike Goad, then age 17, continued his
employment with First Church after Norfleet and the other older
workers were laid off, through August 2006 when he moved away
to attend college. John Rachen, then a high school student (who

5

was trained to take over Goad's duties when he left), was still employed by First Church in 2007. Both Goad and Rachen performed custodial duties. First Church admits that both Goad and Rachan continued to be employed after Norfleet and the older workers were laid off.

3. Norfleet has shown evidence of time sheets recording the hours of employees doing the same set of duties that Norfleet had done when he worked for First Church.

4. Norfleet was not a "custodial employee." According to Norfleet's offer letter, issued to him on August 19, 2001, First Church offers him employment under the title "Facilities Manager." When offering Norfleet his job, Andy Combs explained to Norfleet that his responsibilities would mainly consist of managing the cleaning and maintenance of the church property, setting up for events, and overseeing the work of the custodial staff. Over time, Norfleet's non-custodial duties (i.e. setting up for events) expanded as the Church increased the number and type of activities taking place in its facility. By 2006, Norfleet's non-custodial duties had expanded to the point that he no longer and was not expected to perform custodial functions. Norfleet's duties consisted of non-custodial tasks: setting up and breaking down tables and chairs in meeting rooms, completing repairs, overseeing the creating daily "Duty

6

Cards" for part-time employees, and responding to requests from the Church's staff.

5. Significantly, on information and belief, as of the date Norfleet was terminated, the company to which First Church outsourced its custodial work had no plans to take over the duties performed by Norfleet in 2005 and 2006. Norfleet was told by an employee of the cleaning service that they would not be handling set up for events in the Church facility. Norfleet was also told by Combs that certain employees would continue with duties other than "inside cleaning" even after the outside service took over.

6. Norfleet was never notified at any time by First Church that his employment was unsatisfactory according to First Church's own employment policies. Nor, was Norfleet given any annual performance evaluation, much less a negative one.

### III. FIRST CHURCH RETALIATED AGAINST NORFLEET FOR FILING A COMPLAINT WITH THE EEOC, IN VIOLATION OF 29 U.S.C. § 623(d).

1. On July 12, 2006, in a letter to Combs, Norfleet suggested that he continue working for Respondent on a part-time basis. Norfleet was at minimum an *applicant* for employment with Respondent.

2. Andy Combs subsequently sent a letter to Norfleet, dated July 26, 2006, in which he stated that he *had* planned to ask Norfleet to continue to work for Respondent on a part-time basis, but had subsequently decided not to extend

that offer "[i]n light of the Notice of Charge of Discrimination . . . received Monday, July 24, 2005 from the EEOC . . . ." This was clearly an act of discrimination against Norfleet, who was at minimum and applicant for employment, in violation of 29 U.S.C. § 623(d). That Subsection provides:

It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

## IV. ADDITIONAL ACTIONS BY THE CHURCH IMPACTED NORFLEET EVEN AFTER HIS TERMINATION

1. First Church has stated that it gave each employee that was terminated a severance package equal to one week's pay for each year of employment with the Church, including any and all vacation and sick days the employee may have been entitled to.

2. Norfleet was entitled to five years, plus two weeks, earned vacation time.

3. The Church gave Norfleet a severance check equal to five weeks' pay. Therefore, he received only three additional weeks' severance for five years of service.

8

4. Norfleet was not entitled to unemployment insurance benefits after his termination, since the Church chose not insure its employees. While the Church may take the position that it was permitted to opt out of this insurance, it was required by law to notify its employees that it had done so. First Church never notified Norfleet that he would not be eligible for unemployment benefits if he was let go.

5. First Church did not post any posters notifying the employees of termination, at the time of the employees' discharge.

6. At the time Norfleet was terminated, Norfleet did not receive a letter or any other information regarding COBRA benefits, despite First Church's policy regarding COBRA.

9

EEOC Form 161 (2/08)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Robert Norfleet<br>One East Logan<br>Lemont, IL 60439 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

CERTIFIED MAIL 7000 0600 0022 1008 9502

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2006-02448 | Armernola P. Smith,<br>State & Local Coordinator | (312) 886-5973 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*John P. Rowe*                                03-30-2009 mjh

Enclosures(s)

**John P. Rowe,**
**District Director**

(Date Mailed)

cc:     **1ST CHURCH OF THE NAZAREN**
        **12725 Bell Road**
        **Lemont, IL 60439**

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2006-08152 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Griffith Norfleet** | **(630) 257-6699** | **01-26-1940** |

| Street Address | City, State and ZIP Code |
|---|---|
| **One East Logan Street, Lemont, IL 60439** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **FIRST CHURCH OF THE NAZARENE** | **15 - 100** | **(709) 349-0454** |

| Street Address | City, State and ZIP Code |
|---|---|
| **12725 Bell Road, Lemont, IL 60439** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **04-01-2006** | **07-18-2006** |
| ☒ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by the Respondent in 2001. My most recent position was Facility Manager. On April 1, 2006, Respondent cancelled my insurance benefits, based on my age, 66, (d/o/b/ 01/26/1940).

I believe I have been discriminated against based on my age, in violation of the Age Discrimination in Employment Act of 1967.

RECEIVED EEOC

JUL 20 2006

CHICAGO DISTRICT OFC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Jul 20, 2006** _[signature]_<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act statement before completing this form.

**07W0817.03**

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☒ IDHR | **2007CA0348** |
| | ☐ EEOC | |

## Illinois Department of Human Rights and EEOC

| NAME (Indicate Mr. Ms. Mrs.) | HOME TELEPHONE (Include area code) |
|---|---|
| G. Robert Norfleet | (630 ) 257-6699 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| One East Logan | Lemont, IL 60439 | 1/26/40 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE (Include area code) |
|---|---|---|
| 1st Church of The Nazarene of Lemont | | (708) 349-0454 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 12725 Bell Road | Lemont, IL 60439 | Cook |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| AGE   HANDICAP | 7/26/06 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed attach extra sheets)

I.   A.   **ISSUE/BASIS**

CANCELLATION OF HEALTH INSURANCE BENEFITS – APRIL 1, 2006/DUE TO AGE, 66

B.   **PRIMA FACIE ALLEGATIONS**

1.   My age is 66.

2.   My performance as facility manager was satisfactory.

3.   On April 1, 2006, Andy Combs, Administrator, cancelled my health insurance benefits. The reason given was my age, which makes me eligible for Medicare.

Continued...lgv

---

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS

NOTARY SIGNATURE        MONTH DATE-YEAR

X _____

SIGNATURE OF COMPLAINANT        DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

"OFFICIAL SEAL"
JACQUELYN TURNER HAMB
Notary Public, State of Illinois
My Commission Expires 9/21/09

NOTARY SEAL

FORM 5 (5/05)

Charge Number: 2007CA0348
Complainant: G. Robert Norfleet
Page 2

4. Combs said Respondent would save a lot of money by canceling my health insurance benefits. He chose two Medicare supplement benefits and I complained, but was assured that the coverage was the same as the group health insurance. However, this is not true.

5. Younger employees did not have their health insurance benefits cancelled.

II. A. ISSUE/BASIS
CANCELLATION OF HEALTH INSURANCE BENEFITS – APRIL 1, 2006/DUE TO A PHYSICAL HANDICAP, HISTORY OF CANCER

B. PRIMA FACIE ALLEGATIONS
1. I am handicapped within the meaning of Section 1-103 (I) of the Illinois Human Rights Act.

2. Respondent was aware of my medical condition.

3. On April 1, 2006, Andy Combs, Administrator, cancelled my health insurance benefits. The reason given was my age, which makes me eligible for Medicare.

4. Combs said Respondent would save a lot of money by canceling my health insurance benefits. He chose two Medicare supplement benefits and I complained, but was assured that the coverage was the same as the group health insurance. However this is not true. Combs is aware that even though I am in remission, I need to receive regular treatment in order to maintain my health, and without the health insurance benefits I could not afford the treatment I need.

4. My handicap is unrelated to my ability to perform my job duties.

III. A. ISSUE/BASIS
HARASSMENT – MAY, 2006 TO JULY, 2006/IN RETALIATION FOR OPPOSING UNLAWFUL DISCRIMINATION

B. PRIMA FACIE ALLEGATIONS
1. From April/May, 2006 to July, 2006, I opposed unlawful discrimination by complaining to Respondent about age discrimination. On July 20, 2006, I filed a charge of age discrimination with the Equal Employment Opportunity Commission.

Continued...lgv

Charge Number: 200_ _Au348
Complainant: G. Robert Norfleet
Page 3

    2.    From April/May, 2006, to July, 2006, I was harassed by Andy Combs, Administrator, who repeatedly interfered with my job duties and responsibilities undercutting my ability to do my work.

    3.    Respondent harassed me after I opposed unlawful discrimination, thereby, raising an inference of retaliatory motivation.

IV.   A.   ISSUE/BASIS
                DISCHARGE – JULY 26, 2006/IN RETALIATION FOR OPPOSING DISCRIMINATION

      B.   PRIMA FACIE ALLEGATIONS
          1.   From April/May, 2006 to July, 2006, I opposed unlawful discrimination by complaining to Respondent about age discrimination. On July 20, 2006, I filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC).

          2.   On July 26, 2006, Andy Combs, Administrator, discharged me. One of the reasons given was that in light of the charge of discrimination I filed with EEOC, he did not think that it was in Respondent's best interest to have me working there in any capacity until the matter is resolved.

          3.   Respondent discharged me after I opposed unlawful discrimination, thereby, raising an inference of retaliatory motivation.

V.   A.   ISSUE/BASIS
                DISCHARGE – JULY 26, 2006/DUE TO AGE, 66

      B.   PRIMA FACIE ALLEGATIONS
          1.   My age is 66.

          2.   My performance as facility manager was satisfactory.

          3.   On July 26, 2006, Andy Combs, Administrator discharged me. One of the reasons given for my discharge was laying off all the custodial staff.

          4.   I was not part of the custodial staff, but I was let go together with two other employees around my age.

          5.   Younger employees (under 40), whose performance and qualifications were not better than mine were retained.

Continued…lgv

Charge Number: 200'._AL_348
Complainant: G. Robert Norfleet
Page 4


VI.   A.     **ISSUE/BASIS**
               DISCHARGE – JULY 26, 2006/DUE TO A PHYSICAL HANDICAP, HISTORY OF CANCER.

      B.     **PRIMA FACIE ALLEGATIONS**
1. I am handicapped within the meaning of Section 1-103 (I) of the Illinois Human Rights Act.

2. Respondent was aware of my medical condition.

3. On July 26, 2006, Andy Combs, Administrator discharged me. One of the reasons given for my discharge was laying off all the custodial staff.

4. I was not part of the custodial staff, but I was let go together with two I believe that my handicap was a factor in Respondent's decision to discharge me.

6. My handicap does not interfere with my ability to perform my job duties.


VII.   A.     **ISSUE/BASIS**
               DISCHARGE – JULY 26, 2006/DUE TO A PHYSICAL HANDICAP, HEARING IMPAIRMENT

      B.     **PRIMA FACIE ALLEGATIONS**
1. I am handicapped within the meaning of Section 1-103 (I) of the Illinois Human Rights Act.

3. Respondent was aware of my medical condition.

4. On July 26, 2006, Andy Combs, Administrator discharged me. One of the reasons given for my discharge was laying off all the custodial staff.

5. I was not part of the custodial staff, but I was let go together with two I believe that my handicap was a factor in Respondent's decision to discharge me. Combs became impatient with me whenever I had trouble hearing what he said.

7. My handicap does not interfere with my ability to perform my job duties.


lgv